FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
SEP 12 2008
JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**AARON WALTERS,** *Individually*
*and on Behalf Of All Persons Similarly Situated,*     **PLAINTIFF**

v.     Case No. 4:08CV002484 JLH

**APPLE COMPUTER, INC. &**
**AT&T, INC.**     **DEFENDANTS**

**CLASS ACTION COMPLAINT**

This case assigned to District Judge _Holmes_
and to Magistrate Judge _Jones_

Plaintiff Aaron Walters ("Plaintiff"), individually and on behalf of all others similarly situated, upon both personal knowledge and information and belief, and based upon, the investigation made by his attorneys, which included a review of public statements and information disseminated by Defendants Apple Computer, Inc., and AT&T, Inc. (collectively "Defendants;" separately "Apple" and "AT&T") and others, hereby alleges as follows:

### I. NATURE OF THE ACTION

1. This is a consumer class action case concerning deceptive and unfair business practices carried out by the Defendants in the advertisement and sale of their iPhone 3G devices. As set forth more fully below, Defendants have wrongfully and unfairly deceived the public and their customers by misrepresenting the speed, strength and performance of their new iPhone 3G device and its related 3G-bandwith network protocol in the advertisement and sale of their iPhone 3G device. Consequently, Plaintiff and the class he seeks to represent have experienced damages due to the Defendants' misconduct. This action seeks compensatory, statutory and/or

punitive damages as well as declaratory, injunctive, and all other relief allowed in equity and the law.

## II.   PARTIES

2.   Plaintiff is, and was at all relevant times described herein, a resident of Hazen, Arkansas. In late July 2008, Plaintiff purchased an iPhone 3G at an AT&T retail store in Little Rock, Arkansas. His iPhone 3G device was marketed, distributed, and/or sold by Defendants. Plaintiff and the Class he seeks to represent have incurred significant monetary and non-monetary damages as a result of Defendant's misconduct described herein.

3.   Defendant Apple Computer, Inc. is a California corporation and is headquartered at 20525 Mariana, M/5 28C, Cupertno, California 95014. At all relevant times, Apple was engaged in the business of marketing, distributing and/or selling consumer electronics products, including the iPhone 3G, in Arkansas and throughout the United States.

4.   AT&T, Inc. is a Delaware corporation that maintains its global headquarters at 208 South Akard Street, Dallas, Texas 75202. AT&T provides telecommunications services to consumers and businesses in the United States and internationally. It provides wireless services, including local wireless communications, long-distance, and roaming services with various postpaid and prepaid service plans in Arkansas and throughout the United States.

5.   AT&T is the exclusive wireless carrier authorized by Apple to provide wireless telephone service for the original iPhone and iPhone 3G. The original iPhone and iPhone 3G were designed, manufactured and distributed to be capable with AT&T's EDGE and 3G network protocol.

6.   Whenever this Complaint refers to any act or acts of Defendants, the reference shall so be deemed to mean that the directors, officers, employees, affiliates, or agents of the

responsible defendant authorized such act while actively engaged in the management, direction or control of the affairs of defendant, and each of them, and/or by persons who are the parents or alter egos of the defendants while acting within the scope of their agency, affiliation, or employment whenever this Complaint refers to any act of defendant, the reference shall be deemed to be the act of each defendant, jointly and severally.

### III. JURISDICTION AND VENUE

7. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §1332(d) because (i) there are more than 100 class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs; and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims stated in this Class Action Complaint pursuant to 28 U.S.C. §1367.

8. Venue is proper in this District pursuant to 28 U.S.C. §1391(a)(2). Defendants maintain a substantial presence in this District as Defendants have numerous retail sales locations throughout this District. Further, a substantial part of the acts and conduct charged herein, including the promotion, use, sale, marketing and/or distribution of the product and services at issue, occurred in this District, as did the issuance of materially false and misleading representations.

### IV. CLASS ACTION ALLEGATIONS

9. Plaintiff brings this class action claim pursuant to Rule 23 of the Federal Rules of Civil Procedure. The requirements of Rule 23 are met with respect to the class defined below.

10. Plaintiff brings his claims on his own behalf, and on behalf of the following class (the "Class"):

All persons who purchased one or more iPhone 3Gs from Apple and/or its authorized retailers and a related AT&T 3G service plan from AT&T. Excluded from the Class are the Defendants, their officers and directors at all relevant times, members of immediate families and their legal representatives, heirs, successors, or assigns and any entity in which the Defendants have or had a controlling interest.

11. Plaintiff reserves the right to amend or modify the Class definition in connection with a Motion for Class Certification and/or the result of discovery.

12. This class action is properly brought as a class action for the following reasons. The Class is so numerous that joinder of the individual members of the proposed class (the "Class Members") is impracticable. The Class, upon information and belief, includes tens of thousands of persons geographically dispersed throughout the United States. The precise number and identities of Class Members are unknown to Plaintiff, but are known to Defendants and can be ascertained through discovery, namely using Defendants' records of sales and other information kept by Defendants.

13. Plaintiff does not anticipate any difficulties in the management of this action as a class action. The Class is ascertainable and there is a well-defined community of interests in the questions of law and/or fact alleged since the rights of each Class Member were infringed or violated in similar fashion based upon Defendants' misconduct. Notice can be provided through records and publication, the cost of which is properly imposed upon the Defendants.

14. Questions of law or fact common to the Class exist as to Plaintiff and all Class Members, and these common questions predominate over any questions affecting only individual members of the Class. Among the common questions of law and/or fact are the following:

a. Whether Defendants should be enjoined and required to make appropriate disclosures regarding the limitations of the iPhone 3G and its incompatibility with 3G protocol;

b. Whether Defendants misrepresented that the iPhone 3G had characteristics, uses and/or benefits which it does (did) not have;

c. Whether Defendants' representations stating the iPhone 3G has the quality and compatibility to connect and/or maintain a connection to the 3G protocol in order to transmit data at 3G speeds was false, misleading and/or likely to deceive or otherwise constitute a violation of Arkansas law;

d. Whether Defendants failed to disclose other necessary material facts in order to make its statements not misleading for want of disclosure of such omitted facts;

e. whether Defendants made any express or implied warranties in their sale of iPhone 3G devices;

f. whether Defendants breached any express warranties relating to their sale of iPhone 3G devices;

g. whether Defendants breached any implied warranties relating to their sale of iPhone 3G device;

h. whether Defendants were unjustly enriched by selling iPhone 3G devices by means of deceptive and unfair business practices;

i. the appropriate nature of class-wide equitable relief; and

j.  the appropriate measurement of restitution and/or measure of damages to award to Plaintiff and the Class.

15. Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff and the Class Members. Individual questions, if any, pale by comparison to the numerous common questions that predominate.

16. The injuries sustained by Plaintiff and the Class Members flow, in each instance, from a common nucleus of operative facts – the Defendant's misconduct. The Defendants wrongfully and unfairly deceived the public and their customers by misrepresenting the speed, strength and performance of the iPhone 3G and its related 3G-bandwith network protocol in the advertisement and sale of their iPhone 3G devices despite their knowledge to the contrary.

17. Plaintiff's claims are typical of the claims of the Class Members. The Defendant's uniform, material misrepresentations and omissions and use of unfair and deceptive business practices carried out in the marketing and sale of their iPhone 3G devices apply to equally to Plaintiff and all Class Members. Moreover, the defenses, if any, that will be asserted against Plaintiff's claims are typical of the defenses that will be asserted, if any, against the Class Members' claims.

18. Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff has no interests adverse to the interests of the Class Members and has retained counsel with significant experience in the prosecution of class actions and complex litigation, including consumer litigation, and who will vigorously prosecute this action.

19. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, and individual joinder of all members of the Class is impracticable, if not impossible because the massive number of Class Members are scattered

throughout the United States. Moreover, the cost to the court system of such individualized litigation would be substantial. Individualized litigation would likewise present the potential for inconsistent or contradictory judgments and would result in significant delay and expense to all parties and multiple courts hearing virtually identical lawsuits. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and the court, protects the rights of each Class Member and maximizes recovery to them.

20. Defendants have acted on grounds generally applicable to the entire Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Class as a whole. Notice of pendency of any resolution of this action can be provided to the Class Members by individual mailed notice or best notice practicable under the circumstances.

## V. FACTUAL ALLEGATIONS

### A. Defendants' Marketing of the iPhone 3G.

21. Beginning in or around the summer of 2007, Defendants began marketing and selling the iPhone. The iPhone is a consumer electronic device designed, manufactured and sold as a mobile phone, iPod, and internet communications device with desk-top email, web browsing, maps and searching. The iPhone was (and is) exclusively offered on AT&T's wireless network. The iPhone is considered 2G technology, transmitting data via AT&T's EDGE protocol.

22. Beginning in or around the summer of 2008, Defendants began marketing and selling the iPhone 3G device, a supposedly 'newer an improved' version of the original iPhone.

7

23. The term '3G' refers to the third generation in mobile communications. Specifically, 3G technology features faster bandwidth and transfer rates when compared to 2G technology.

24. The release of the iPhone 3G was preceded and followed by an aggressive marketing campaign that included radio, television, internet and print advertisements.

25. In essence, the iPhone 3G was marketed and sold as being able to properly operate on AT&T's related 3G-bandwith protocol thus offering iPhone 3G consumers faster internet, email, telephone and messaging services when compared to similar devices operating on 2G and older protocols. For example, Apple specifically represented (and continues to represent) that the iPhone 3G is "Twice as fast. Half the price" as its predecessor, the original iPhone.

26. Indeed, Apple included the description '3G' in the designated name of the iPhone 3G device. Built in to the very name of the phone, Apple (and likewise AT&T) engaged in a campaign to lead consumers to believe that the iPhone 3G device would properly operate on AT&T's related 3G-bandwith protocol and offer faster data services.

27. In their use of the advertising mediums discussed above, Defendants uniformly advertised the iPhone 3G device and expressly represented the quality and compatibility of AT&T's 3G protocol.

28. In connection with each sale, Defendants marketed, advertised and warranted that the iPhone 3G was fit for the ordinary purpose for which such goods were used – receiving telephone calls, internet service, email service, and messaging service at 3G protocol speeds.

29. Apple, with the direct participation of AT&T, manufactured and distributed the iPhone 3G intending that customers would purchase, regardless of place of purchase, or location

where customers actually use them. The iPhone 3G was placed into the stream of commerce, distributed, and ultimately offered for sale and sole to Plaintiff and other class members in Arkansas, as well as throughout the United States.

30.     Apple, with the direct participation of AT&T, promoted the sale of its new iPhone 3G on its website and through television, radio and print media. Such advertising, promotion and marketing conveys to the reasonable consumer, and Defendants intended for customers believe their statements and representations regarding the iPhone 3G's reliability and efficiency in properly working on AT&T's 3G network.

31.     As previously discussed, Apple and AT&T have an agreement whereby AT&T is the exclusive service provider for the iPhone and iPhone 3G. Consumers, including Plaintiff, are unable to choose any other network carrier when using their iPhone 3G. In connection with this arrangement, AT&T profits by selling 3G upgrade plans at a $10/month premium and requires consumers to enter into new two (2) year contracts.

**B.     Defendants' iPhone 3G Marketing Scheme is found to be Deceptive and/or Fraudulent.**

32.     Prompted by the public advertisements from Defendants promoting the iPhone 3G's enhanced capabilities, Plaintiff became interested in purchasing an iPhone 3G. All of the advertisements he saw or heard expressly stated or implied that the iPhone 3G would properly operate on AT&T's related 3G-bandwith protocol iPhone 3G and would thus transmit data via the 3G protocol at 3G speeds.

33.     Correspondingly, Plaintiff purchased an iPhone 3G device in late July 2008 and entered into a related two-year service agreement with AT&T. At the time Plaintiff purchased the phone, he did not have reason to suspect that the iPhone 3G would not properly operate on

AT&T's related 3G-bandwith protocol or otherwise be inadequately compatible with the 3G protocol.

34. After purchasing and using the iPhone 3G device, Plaintiff noticed that his internet connection and ability to send and receive emails, text messages, and other data transfers through the device were considerably slower than advertised as his iPhone 3G would predominately only connect to AT&T's much slower EDGE 2G protocol. Plaintiff also experienced (and continues to experience) difficulties in making phone calls and finding good 3G protocol reception with his iPhone 3G device. Indeed, a majority of his phone calls have been (and are being) dropped.

35. Surprisingly, the failure of Plaintiff's iPhone 3G device to properly connect and use the 3G protocol occurs in the metropolitan area of Little Rock, Arkansas, which is an area that has excellent 3G coverage according to Defendants.

36. Similarly situated consumers across the country have experienced (and are experiencing) similar problems with their iPhone 3G devices. The failure of Defendants to deliver as advertised is a widespread and common problem amongst consumers who have purchased iPhone 3G devices.

37. Based upon information and belief, the AT&T infrastructure is insufficient to handle the overwhelming 3G signal based upon the high volume of iPhone 3G subscribership. Defendants have oversold the network by selling more phones and more subscription plans than the 3G infrastructure can handle. Simply, the large number of 3G iPhone devices demand too much power from the 3G bandwidths and have thus created widespread connectivity and user problems.

38. Based upon information and belief, the iPhone 3G devices' sensitivity to third-generation network signals is well below the level specified in the 3G standard. Upon information and belief, hardware problems introduced during mass production may also contribute to the connectivity and use issues discussed above.

39. Defendants knew or should have known that AT&T's 3G protocol could not handle the massive influx of their iPhone 3G devices. Defendants knew or should have known that the strain on the network would make it impossible to provide reliable and sustained connectivity to their customers. Thus, Defendants knew or should have known Plaintiff's and similarly situated consumers' iPhone 3G devices would not properly operate on AT&T's related 3G-bandwith protocol as advertised.

40. Based upon information and belief, Defendants concealed and intentionally failed to disclose to Plaintiff and the other Class Members this information and as a direct and proximate result, Plaintiff and the Class Members have been damaged thereby.

## VI. CAUSES OF ACTION

**COUNT I.** *VIOLATION OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT*

41. Plaintiff incorporates by reference all of the foregoing paragraphs as if set forth herein.

42. As set forth in herein, Defendants have engaged in acts, practices, representations and omissions relating to the marketing and sale of their iPhone 3G device which are material and which are false, deceptive, and/or likely to mislead customers acting reasonably under the circumstances.

43. Defendants' marketing and sales practices utilizing deceptive and unfair business practices offends established public policy and is unethical, oppressive, unscrupulous or substantially injurious to consumers.

44. As described herein, Defendants' wrongful actions violate Arkansas Code Annotated ("A.C.A.") §§ 4-88-107 and 4-88-108.

45. Specifically, Defendants have acted in violation of A.C.A. § 4-88-107(a)(10). Defendants have engaged in unconscionable, false, and/or deceptive acts in their commercial and business practices. Through their marketing and sales practices associated their iPhone 3G device, Defendants unfairly and deceptively misled their eventual customers by misrepresenting the speed, strength and performance of their new iPhone 3G and its related 3G-bandwith network protocol in the advertisement and sale of iPhone 3G devices; by failing to adequately disclose material information to the contrary that Defendants knew or should have known; and by subsequently charging and billing their customers related fees and costs directly related to these deceptive practices.

46. In light of Defendants' misrepresentations and their failure to disclose, or clearly and conspicuously disclose, all material information related to their iPhone 3G device, Defendants have also acted in violation of A.C.A. § 4-88-108. Defendants have used deception, fraud and/or false pretenses in the marketing and sale of their iPhone 3G device, and Defendants concealed, suppressed and omitted related material facts with the intent that others rely upon the concealment, suppression, and omission.

47. Defendants' unfair and deceptive trade practices, amounting to violations of the aforementioned code sections, proximately caused damage to Plaintiff and the Class Members.

48. Accordingly, Plaintiff and this Class are entitled to judgment against the Defendants for their actual damages, attorneys' fees and costs of litigation.

**COUNT II:** *BREACH OF EXPRESS WARRANTY*

49. Plaintiff incorporates by reference all of the foregoing paragraphs as if set forth herein.

50. Plaintiff, and the members of the Class, sought to purchase electronic devices capable of properly performing on the 3G protocol. On or about the time Defendants sold to Plaintiff and the Class Members their iPhone 3G devices, Plaintiff and the members of the Class relied on Defendants' express warranties and other information disseminated by Defendants which specifically expressed that Defendants' iPhone 3G device was capable of properly performing on the 3G protocol.

51. By the acts set forth in detail above, Defendants expressly warranted that the iPhone 3G devices were capable of properly performing on 3G protocol, but intentionally omitted, suppressed, and withheld material information to the contrary. Plaintiff and the members of the Class bought Defendants' iPhone 3G devices justifiably relying on Defendants' skill, judgment and representations. However, Defendants' iPhone 3G devices do not perform as warranted, as set forth in detail above.

52. At the time of the sale(s), Defendants had reason to know the particular purpose for which their iPhone 3G devices were being offered and acquired, and that Plaintiff and the members of the Class were relying on Defendants' express warranties and representations that their iPhone 3G devices were suitable for that purpose.

53. However, Defendants breached this express warranty by providing goods that are/were unsuitable for the purpose for which they were made and purchased because the iPhone 3G devices do not properly perform on 3G protocol as discussed above.

54. As a direct and proximate result of Defendants' actions, Plaintiff and the Class have suffered significant damages.

55. Accordingly, Plaintiff and the Class are entitled to judgment against the Defendants for their actual damages in the form of restitution, attorneys' fees and costs of litigation.

**COUNT III.** *BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY*

56. Plaintiff incorporates by reference all of the foregoing paragraphs as if set forth herein.

57. Plaintiff, and the members of the Class, sought to purchase electronic devices capable of properly performing on 3G protocol. In doing so, Plaintiff and the members of the Plaintiff Class relied on Defendants' skill and judgment to select and furnish suitable goods for that purpose; on or about the time Defendants sold to Plaintiff and the Class Members their iPhone 3G devices.

58. By the acts set forth in detail above, Defendants warranted that the iPhone 3G devices were capable of properly performing on 3G protocol, but intentionally omitted, suppressed, and withheld material information to the contrary. Plaintiff and the members of the Class bought Defendants' iPhone 3G devices relying on Defendants' skill, judgment and representations. However, Defendants' iPhone 3G devices do not perform as warranted, as set forth in detail above.

66. Plaintiff and Class are entitled to the amount of Defendants' ill-gotten gains, including interest, resulting from its unlawful, unjust and inequitable conduct as described above.

## VII. JURY DEMAND

67. Plaintiff hereby demands a trial by jury of all issues raised in the forgoing Class Action Complaint.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays, individually and on behalf of the members of the Class, that this Court:

> A. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;
>
> B. issue an order certifying the Class as defined above;
>
> C. award all actual, general, special, incidental, statutory, and consequential damages to which Plaintiff and Class members are entitled;
>
> D. award pre-judgment and post-judgment interest on such monetary relief;
>
> E. grant appropriate injunctive and/or declaratory relief, including but not limited to an order that requires Defendant to cease their misleading marketing campaign;
>
> F. award reasonable attorney's fees and costs; and
>
> G. grant such further and other relief that this Court deems appropriate.

DATED: September 12, 2008                Respectfully submitted,

                                         **EMERSON POYNTER LLP**

                                         *[signature: Christopher D. Jennings]*

                                         Scott E. Poynter, AR Bar # 90077
                                         Email: scott@emersonpoynter.com
                                         Christopher D. Jennings, AR Bar # 2006306
                                         Email: cjennings@emersonpoynter.com
                                         Gina M. Dougherty, AR Bar # 98168
                                         Email: gdougherty@emersonpoynter.com
                                         Ryan J. Caststeel, AR Bar # 2007212
                                         Email: rjcaststeel@emersonpoynter.com
                                         The Museum Center
                                         500 President Clinton Ave., Ste. 305
                                         Little Rock, AR 72201
                                         Telephone: (501) 907-2555
                                         Facsimile: (501) 907-2556

                                         John G. Emerson, AR Bar # 2008012
                                         Email: jemerson@emersonpoynter.com
                                         830 Apollo Lane
                                         Houston, TX 77058
                                         Phone: (281) 488-8854
                                         Fax: (281) 488-8867

                                         *Counsel for Plaintiff*